Kristine M. Akland
AKLAND LAW FIRM, PLLC
PO Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| FRIENDS OF THE BITTERROOT,<br><br>Plaintiff,<br><br>vs.<br><br>LEANNE MARTEN, Regional Forester of Region One of the U.S. Forest Service, UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>Defendants. | CV-20-19-M-DLC<br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR ATTORNEY FEES AND OTHER EXPENSES** |

## I.      INTRODUCTION

Plaintiff Friends of the Bitterroot (Friends) respectfully files this

motion for attorney fees and other expenses under the Equal Access to

Justice Act (EAJA) fee provision. 28 U.S.C. §2412. As discussed below,

Friends' request for attorney fees under EAJA is reasonable because

Friends is a prevailing party, Defendants' position was not substantially

justified, no special circumstances exist to make an award unjust, and the

requested rates and hours are reasonable.

II.    ARGUMENT

**A.  Friends qualify for an award of attorneys' fees under EAJA.**

The Supreme Court holds: "the specific purpose of the EAJA is to

eliminate for the average person the financial disincentive to challenge

unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154,

163-65 (1990). In *Jean*, the Supreme Court quoted the House and Senate

Committee Reports at length:

> An adjudication or civil action provides a concrete, adversarial
> test of Government regulation and thereby insures the
> legitimacy and fairness of the law. An adjudication, for
> example, may show that the policy or factual foundation
> underlying an agency rule is erroneous or inaccurate . . . .
> Where parties are serving a public purpose, it is unfair to ask
> them to finance through their tax dollars unreasonable
> Government action and also bear the costs of vindicating their
> right.

496 U.S. at 165 n.14 (*quoting* S.Rep. No. 96–253, p. 7 (1979) and H.R.Rep.

No. 96–1418, p. 12 (1980)). Therefore, "removing disincentives to

adjudication when the Government acts unreasonably both vindicates

2

individual rights and curbs governmental excesses." *Id*.

Accordingly, EAJA must be read and applied in a manner that is consistent with its purpose "to diminish the deterrent effect of seeking review of . . . governmental action[.]" *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989). "The Government's general interest in protecting the federal fisc [] is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights and [] curbing . . . the unreasonable exercise of Government authority." *Jean*, 496 U.S. at 163-65. The Supreme Court has repeatedly reaffirmed these considerations: "EAJA's purposes are clearly stated. . . . the high cost of legal assistance and the superior resources and expertise of the Federal Government precluded private parties from challenging or defending against unreasonable governmental action. []. Fee awards were intended to address this problem [.]" *Ardestani v. I.N.S.,* 502 U.S. 129, 142 (1991).

EAJA provides that a court shall award attorney fees to a "prevailing party" in a civil action brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." 28 U.S.C. §2412(d)(1)(A). The policy behind EAJA "is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or

fact and has thereby forced the litigant to seek relief from a federal court."
*Ibrahim v. U.S. Dept. of Homeland Security*, 912 F.3d 1147, 1167 (9th Cir.
2019) (internal citations omitted).

### 1. Friends are an eligible prevailing party.

In this case, fees are "appropriate" because Friends is a prevailing
party. "Prevailing party" is a "legal term of art." *Buckhannon Bd. & Care
Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598,
603 (2001). "[A] plaintiff [must] receive at least some relief on the merits of
[its] claim before [it] can be said to prevail . . . ." *Id*. The Supreme Court
holds that receipt of an "enforceable judgment[] on the merits" is one of the
ways that a plaintiff may qualify as a prevailing party. *Id*. at 604.  Thus, the
Ninth Circuit holds that a "[p]laintiff is indisputably a 'prevailing party'" if
it "has secured an 'enforceable judgment[ ] on the merits.'" *Vogel v. Harbor
Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quoting *Buckhannon*,
532 U.S. at 603–04).

Eligible parties under EAJA include organizations with a net worth of
less than $7,000,000 with fewer than 500 employees at the time the action
was filed. 28 U.S.C. §2412 (d)(2)(B). Friends meets this requirement and is
therefore an eligible party. Declaration of Jim Miller ¶2 (October 7, 2020).

Here, Friends is a prevailing party. This Court granted summary

judgement in Friends' favor regarding their challenge to the minimum road system. Doc. 39 at 33. This Court held, "The Forest Service' implementation of a minimum road system without the necessary analysis violates the Travel Management Rule, NEPA, and the APA." *Id*. at 32. The Court found that for decisions adopting a minimum road system, an analysis of the four factors in 36 C.F.R. § 212.5(b)(1) must be present in a NEPA documentation. *Id.* at 30.

In *Wood v. Burwell*, the Ninth Circuit ordered remand without vacatur, but it nonetheless held that the plaintiffs had obtained "a judicially sanctioned material alteration in the parties' relationship because 'the defendants were required to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do.'" 837 F.3d 969, 973-74 (9th Cir.2016)(citations omitted). Therefore, the plaintiff satisfied the prevailing party standard and was entitled to attorney fees. *Id*.

Likewise, here, although the Court did not vacate the Project Decision, the Summary Judgment Order set aside the portion of the final Decision regarding the minimum road system. Doc. 39 at 32. The Court stated, "If the Forest Service wishes to adopt a minimum road system for the Project area, it may do so in a supplemental environmental assessment or as a stand-alone Project." *Id.* at 33. The Forest Service is now required to

implement a minimum road system pursuant to 36 C.F.R §212.5 with a

four-factor analysis in its NEPA documentation. *Id*. at 30. Further, Friends

and the public will be able to adequately participate in the decision-making

process regarding implementation and analysis of a minimum road system

in the Darby Lumber Lands II Project Area. Thus, the Order was "a

judicially-sanctioned material alteration in the parties' relationship because

'the defendants were required to do something directly benefitting the

plaintiff[ ] that they otherwise would not have had to do.'" *Wood*, 837 F.3d

at 973–74. For this reason, Friends is a prevailing party.

2. **All claims are related because they share a common course of conduct; therefore, all claims are compensable.**

The Ninth Circuit issued an *en banc* opinion last year clarifying that

even if a party prevails on only one claim, it is nonetheless entitled to fees

for work on all claims that arose from the same course of conduct: "We do

not require commonality of both facts and law to conclude that claims are

related. []. Rather, the focus is to be on whether the unsuccessful and

successful claims arose out of the same course of conduct. . . . The fact that

one claim or theory is eventually determined to be true does not mean that

the claims were unrelated to one another." *Ibrahim v. U.S. Dep't of*

*Homeland Sec.*, 912 F.3d 1147, 1174-76 (9th Cir. 2019)(en banc)(internal

quotation marks omitted), *cert. denied* 2019 WL 5150733 (U.S. Oct. 15,

2019). In *Ibrahim*, the Ninth Circuit further found that where the victory affects more than just the case at bar and establishes, "important principles of law, benefiting future individuals" a full award should be given. *Id.* at 1178.

Here, because all of Friends' claims arose from the same course of conduct – the Darby Lumber Lands II Project – Friends should be compensated for all of their claims even though some claims were brought under different legal theories. *See Ibrahim,* 912 F.3d at 1174-76. As this Court recently held in *Alliance for the Wild Rockies v. Savage*: "all of [plaintiff's] claims challenged the same action by the Forest Service, and they are accordingly sufficiently related to one another for a full award." 2019 WL 3293425, at *6 (D. Mont 2019).

Importantly, this Court's opinion is the first opinion finding that where the Forest Service implements a minimum road system, it must present an analysis of the four factors in 36 C.F.R. §212.5(b)(1) in the project's NEPA documentation. Doc. 39 at 30. Thus, this holding establishes "important principles of law, benefiting future individuals" and therefore effects more than the case at bar. *Ibrahim,* 912 F.3d at 1178. Therefore, a full award should be given. *Id.*

### 3.  The BLM's position was not substantially justified and no "special circumstances makes an award unjust."

EAJA creates a presumption that fees will be awarded unless the government's position was substantially justified." *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir. 1988). "For its action to be substantially justified, the government must make a 'strong showing' that its position was substantially justified." *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 712 (3rd Cir. 1983) (citation omitted); *also see Thomas*, 841 F.2d at 335 ("the government has the burden of showing that its case has a reasonable basis in law and in fact.") If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion." *Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997).

The Forest Service cannot make this "strong showing" here. The Forest Service's position was that it addressed the four factors required under 36 C.F.R § 212.5(b)(1) in the Darby Lumber Lands II Environmental Assessment and planning level documents. Doc. 19 at 12-13. However, this Court found that Defendants "do not explain where the Court can find an analysis of the statutory and regulatory requirements" in any of the documents Doc. 39 at 30-31. Further, the Court held that "any analysis contained in the Darby Lumber Lands Travel Analysis Report cannot cure

any deficiencies in the Environmental Assessment because it is well settled that a site-specific project may not tier to a non-NEPA document." *Id*. at 31. Thus, because Court determined that the Darby Lumber Lands II project area's minimum road system is unlawful, Doc. 39 at 32, the agency's conduct is therefore not substantially justified. *Meinhold*, 123, F.3d at 1278.

The agency also bears the burden of proving any special circumstances that would make an award unjust. *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). Here, Friends is unaware of any special circumstances that would make an award unjust.

### 4. Friends' requested rates are reasonable.

The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is also referred to as the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee." *Id.* at 561. This is especially true in cases involving the vindication of the public interest, such as this case. *City of Riverside v. Rivera,* 477 U.S. 561, 572 (1985). Friends have calculated this "lodestar" amount. *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992).

To determine reasonable rates,

> The court must look to the rate prevailing in the community for
> similar work performed by attorneys of comparable skill,
> experience and reputation; it may not refer to the rates actually
> charged to the prevailing party. . . Rates should be established
> by reference to the fees that private attorneys of an ability and
> reputation comparable to that of prevailing counsel charge their
> paying clients for legal work of similar complexity.

*Natural Resources Defense Council v. Babbitt,* 1994 WL 361811 *7-8

(N.D. Cal. 1994); *see also South Yuba Citizens v. NMFS* 2012 WL 1038131

at *6 (E.D. Cal. 2012).

In regards to Mr. Bechtold's rate, this Court has held that $340/hr in

district court in 2018 is a reasonable market rate:

> Mr. Bechtold is a highly skilled attorney who possess
> considerable expertise in environmental litigation. Mr.
> Bechtold graduated from Harvard with a concentration in
> biology and focus in ecology. He received an M.S. in
> Environmental Studies where he specialized in public land use
> and policy. While in law school, Mr. Bechtold served as an
> editor of the *Public Land and Resources Law Review* and
> published an article on the listing of the bull trout under the
> Endangered Species Act. He graduated in 2000 with high
> honors. And in the 19 years since graduation, Mr. Bechtold has
> built a successful practice in environmental litigation.

*Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *4 (D.

Mont. 2019)*; see also Savage,* 2019 WL 3293425 at *6-7.

Therefore, here, Mr. Bechtold requests $370/hour for 2020

district court hours. Declaration of Timothy M. Bechtold ¶12

(October 6, 2020).

Ms. Akland's requested rates are also reasonable. In determining

annual hourly rate increases, this Court has held:

> Depth of experience and years of experience are imperfectly
> correlated, and some attorneys demonstrate experience and
> legal judgment beyond their years of practice. While an
> attorney's number of years in practice is a good starting point
> to estimate an attorney's depth of experience, other factors—
> such as his or her courtroom experience, continued education,
> mentorship, and prior work on complex cases—are also highly
> indicative of an attorney's experience and overall "quality of
> representation." See *Blum*, 465 U.S. at 898–99. To estimate an
> attorney's proficiency in contrast to the other attorneys within
> the prevailing market, some courts have looked at the role the
> attorney played in the litigation (whether the attorney was first
> or second chair) or the attorney's effectiveness in the
> courtroom. *See Insinga v. Cooperative Centrale Raiffeisen
> Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 510 (S.D. N.Y.
> 2007) (awarding a relatively high hourly rate justified by the
> attorney's "highly effective" courtroom demeanor); *Schwarz*,
> 73 F.3d at 908 (approving of a higher hourly rate for lead
> counsel).

*Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *4. Ms.

Akland's rates are based on a $10/hour increase for first four years of

practice, starting with the 2014 EAJA rate. Declaration of Kristine M. Akland

¶9 (October 7, 2020). Then, from 2018-2020, her rate increased by $20/year in

light of her increased skill, experience, and legal judgement. *Id*. at ¶¶ 10-11.

Thus, she requests $250/hour in 2019 and $270/hour in 2020. *Id*.

Mr. Bechtold and Ms. Akland's distinctive skills were ""not [] available

elsewhere at the statutory rate." *Love*, 924 F.2d at 1495. The high-quality legal

11

representation was not otherwise available elsewhere to Alliance at statutory

rates and could not have been provided by local general practitioners. Miller

Declaration ¶¶4-5. The ultimate success in this case would not have happened

without counsel's specialized knowledge, expertise, and skill in environmental

law. *Id.* ¶ 7.

Finally, in light of the Ninth Circuit Appellate Commissioner's recent

order, Plaintiffs request market rates for work performed on this fee motion.

*Greenpeace v. Stewart*, 2020 WL 2465321, at *5-6 (9th Cir. May 12, 2020). In

May 2020, the Appellate Commissioner held that it is more reasonable and

consistent with EAJA to award counsel's market rate for all tasks, rather than

awarding different fee rates for different tasks:

> USFS contends that Greenpeace should be compensated at the
> EAJA statutory rate for preparing the fee pleadings, because the
> Greenpeace attorneys are not experts in attorneys' fees and
> EAJA litigation is not a recognized field for an enhanced rate.
> This contention lacks merit.
> . . .
> The approach of using different hourly rates for different portions
> of the litigation may be within the discretion of the court, as
> USFS's citations suggest, but this court has not adopted the
> approach as necessary or advisable. Furthermore, as Greenpeace
> notes in response to USFS's argument, applying different hourly
> rates to different parts of an EAJA litigation is contrary to the
> Supreme Court's instruction that "the EAJA--like other fee-
> shifting statutes--favors treating a case as an inclusive whole,
> rather than as atomized line-items." *Jean*, 496 U.S. at 161-62.
>
> In general, applying different hourly rates to different aspects of a
> litigation risks turning the fee award proceedings into a second

major litigation, contrary to the Supreme Court's admonition in
*Hensley*. *See Hensley,* 461 U.S. at 437. As a practical matter, the
atomized approach to determining hourly rates that USFS
proposes would require the court to assess the difficulty of
different tasks, determine the level of expertise required at
different stages of the litigation, and hypothesize the appropriate
hourly rate for the tasks and stage of the litigation. This approach
would be unwieldy and time-consuming.

A more reasonable approach, which is also consonant with
settled caselaw, is to determine if the hours expended are
reasonable for different tasks in the litigation for the attorneys at
their market rates. . . . Adhering to the "lodestar" method avoids
determining whether the attorney working on a particular task is
overqualified for the labor and should be compensated at varying
hourly rates USFS's contention lacks merit and Greenpeace's
attorneys *will be compensated at their market rates for
reasonable hours expended during all stages of the proceedings,
including the fee litigation.*

*Id.* Accordingly, Plaintiffs request compensation for counsel "at their market

rates for reasonable hours expended during all stages of the proceedings,

including the fee litigation." *Id.*

## 5.  Plaintiffs' requested hours are reasonable.

The Supreme Court holds: "absent unreasonably dilatory conduct by the

prevailing party in 'any portion' of the litigation, which would justify denying

fees for that portion, a fee award presumptively encompasses all aspects of the

civil action. . . . EAJA—like other fee-shifting statutes—favors treating a case

as an inclusive whole, rather than as atomized line-items." *Jean*, 496 U.S. at

161-62. The hours expended on this case were not incurred on unreasonably

dilatory conduct, but instead on reasonable and necessary tasks. Akland

Declaration ¶13; Bechtold Declaration ¶15.

Regarding the number of hours reasonably expended, "[b]y and large,

the court should defer to the winning lawyer's professional judgment as to how

much time [s]he was required to spend on the case." *Moreno v. City of*

*Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Counsels' "[s]worn

testimony that, in fact, it took the time claimed is evidence of considerable

weight on the issue of the time required." *Perkins v. Mobile Housing Board*,

847 F.2d 735, 738 (11th Cir. 1988). As the D.C. Circuit has explained, "[t]he

key question is whether the work was reasonably done in pursuit of the ultimate

result. In other words, would a private attorney being paid by a client reasonably

have engaged in similar time expenditures?" *Goos v. National Ass'n of Realtors*,

68 F.3d 1380, 1385-1386 (D.C. Cir. 1995); *see also Woods v. Graphics*

*Communications*, 925 F.2d 1195, 1207 (9th Cir. 1991). Accordingly, the

standard for compensation is not success on every motion, but rather "whether

a reasonable attorney would have believed the work to be reasonably expended

in pursuit of success at the point in time when the work was performed."

*Pollinator Stewardship v. EPA,* 2017 WL 3096105 at *8 (9th Cir. 2017)

(citation omitted).

Also, the Ninth Circuit Appellate Commissioner recently held: "the

standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace,* 2020 WL 2465321, at *8 (citation omitted). To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *City of Riverside,* 477 U.S. at 570 n.4.

In prosecuting in this case, Friends' attorneys expended reasonable hours engaged in normal justified tasks. Akland Dec. ¶13; Bechtold Dec. ¶15. In compiling the totals, they reviewed their contemporaneous time entries to ensure that no hours were excessive, redundant, or otherwise unnecessary. Akland Dec. ¶13, Bechtold Dec. ¶14. To document their time, attorneys must "simply list[] and identify[] the general subject matter of [their] time expenditures" on their timesheets. *Fischer v. SJB P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000). Here, Friends' attorneys have attached itemized timesheets to their declarations.

Pursuant to these Declarations, Friends request compensation for 318.1 hours for Akland for a total of $85,811.00, and 17.8 hours for Bechtold for a total of $6,586.00.

## 6. Other costs and expenses should be awarded.

EAJA allows for the award of costs incurred by Friends in litigation. 28

U.S.C. 2412(a)(1). Friends seek reimbursement for normal litigation

costs/expenses incurred in this case. Concurrent with the filing of this

motion, Friends submit a Bill of Costs on Form AO 133 for the filing fee

and service which amounts to $417.60

### III.    CONCLUSION

In conclusion, Plaintiffs respectfully requests the following:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| **AKLAND** |  |  |  |
| 2019 District Court | $250 | 3.8 | $950 |
| 2020 District Court | $270 | 313.7 | $84,861 |
|  |  |  |  |
| **BECHTOLD** |  |  |  |
| 2020 District Court | $370 | 17.8 | $6,586 |
|  |  |  |  |
| **TOTAL FEES** |  |  | **$92,397** |
|  |  |  |  |
| **BILL OF COSTS** |  |  | **$417.60** |
|  |  |  |  |
| **GRAND TOTAL** |  |  | **$ 92,814.60** |

//

Respectfully submitted this 8th day of October 2020.


        */s/Kristine M. Akland*
        Kristine M. Akland
        Akland Law Firm, PLLC

        Timothy M. Bechtold
        Bechtold Law Firm, PLLC

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 3,434 words,

excluding the caption, signature blocks, and certificate of compliance.

/s/ Kristine M. Akland
Kristine M. Akland
Akland Law Firm, PLLC

Timothy M. Bechtold
Bechtold Law Firm, PLLC


Attorneys for Plaintiffs